ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FANNIE MAE SMITH, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:09-CV-494-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

A.  Statement of the Case

Plaintiff Fannie Mae Smith ("Smith") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). On August 15, 2006, Smith applied for SSI benefits alleging that she had become disabled on January 1, 2003. (Transcript ("Tr.") 11.) Her applications were denied initially and on reconsideration. (Tr. 11.)

The ALJ held a hearing on August 5, 2008 and issued a decision on October 23, 2008 that Smith was not disabled. (Tr. 8-24.) Smith filed a written request for review, and the

1

Appeals Council denied Smith's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-9.)

B.     <u>Standard of Review</u>

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA, and numerous regulatory provisions govern SSI benefits. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests

2

upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

C.  Issues

In her brief, Smith presents the following issues:

1. Whether the ALJ erred by failing to include a function-by-function assessment of Smith's ability to perform each of the mental activities described in 20 C.F.R. § 404.1545(c) into the residual functional capacity ("RFC") assessment, as required by Social Security Ruling ("SSR") 96-8p and SSR 85-15.

2. Whether the ALJ erred in determining that Smith was not disabled based on evidence that she was able to work part-time.

D. <u>ALJ Decision</u>

The ALJ, in his October 23, 2008 decision, found that Smith had not engaged in any substantial gainful activity "at any relevant time addressed by this decision." (Tr. 12.) He further opined that Smith had the severe impairments of "hypertension, high cholesterol, non-insulin dependent diabetes, hyperlipidemia, a history of polio, major depression with psychotic features, dysthymia, and rule out a cognitive disorder not otherwise specified." (*Id.*) He held that Smith did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing. (*Id.*) As to Smith's RFC, the ALJ stated:

> Ms. Smith has had the residual functional capacity to do light work where she is: Not required to stoop, crouch, crawl, kneel, or climb stairs and ramps more than occasionally; not required to climb scaffolds, ladders, and ropes or balance; not required to stand/walk for more than 4 hours out of an 8 hour workday; not required to handle or finger objects more than frequently; not required to work at unguarded heights or near unguarded hazardous mechanical equipment; not required to understand, remember, and carry out more than simple instructions; not required to have more than superficial interaction with the public; and not required to adapt to more than simple changes in a routine work setting more often than on a weekly basis. Ms. Smith can work full-time at this residual functional capacity on a sustained basis and maintain employment for an indefinite period of time. (*See Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), and *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986)).

(Tr. 13.) In support of this RFC assessment, the ALJ stated, as relevant here:

> At the hearing, Ms. Smith testified as follows: . . . . She lives with her daughter and grandchildren. Her daughter takes care of the house. She tries to sleep during the day. She does not sleep well at night because she hears voices at nights. She also sometimes hears the voices in the daytime. . . . She takes medication for depression, anxiety, and hallucinations, but she still hears voices. She can care for her own hygiene, and she sometimes drives. She goes to the Mental Health and Mental Retardation Center (MHMR) for her depression. . . . Her last job was in January 2006. She worked at the Aztec facility cleaning offices about 4 hours a day. The job stopped because they went out of business. She does not feel she could do that job 8 hours a day due to the constant standing

4

and pain in her feet. . . . She was hearing voices when she was doing the cleaning job; the pictures on the wall scared her. (End of Ms. Smith's testimony).

. . . .

The evidence indicates Ms. Smith has complained of hearing voices and seeing things, but these symptoms usually occur at night before she falls asleep, and her description of the hallucinations was considered vague. Her mental status examinations have otherwise been good and do not indicate Ms. Smith has had the severe concentration problems she testified about. Moreover, I note Ms. Smith testified she stopped working part-time as a maid because the company she worked for went out of business. She did not stop working due to her medical or mental impairments. She said she had hallucinations during the time she worked, which indicates she was able to work despite her symptoms. The question is whether she could work full-time, not weather [sic] she could do work activity.

At the hearing, Dr. Simonds[, the medical expert,] testified as follows: . . . . In October 2006 Ms. Smith underwent a consultative psychiatric evaluation and as [sic] diagnosed with major depression with possible psychosis because of reported hallucinations at night. A reviewer of the report opined the hallucinations were hypnagogic[1] and not psychosis. Ms. Smith began treatment at MHMR in 2006 and was diagnosed with major depression. She said she had hallucinations since childhood. The night hallucinations again were thought to be hypnagogic. She takes medication for her condition. She initially had a low global assessment of functioning[2] [score], but she improved with treatment. The MHMR treatment records indicated her depression scores improved and were moderate. In November 2007 she was doing okay and was not hearing voices. In October 2007 Dr. Solano opined in an interrogatory Ms. Smith had marked problems in concentration and moderate problems in social functioning, and indicated Ms. Smith would not be able to work. This was done in October 2007 and was not consistent with the MHMR records at that time. . . . She would be limited to simple work with minimal contact with the public and coworkers. . . . The global assessment of functioning score is a number selected to pertain to the severity of symptoms and function, but doctors do not put down a reason for why the [sic] chose the number, so Dr. Simonds usually looks at the other numbers where the doctors indicate ratings for particular areas. Those are more important

---

[1] Hypnagogic means hypnotic or occurring just before sleep. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 911 (31st ed. 2007).

[2] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (DSM-IV).

than the global assessment of functioning score, as well as handwritten notations. (End of Dr. Simonds' testimony).

I find Dr. Simonds' testimony and opinions were well explained, well supported, and very consistent with the remaining credible medical evidence, particularly the objective medical evidence. I note that he is a medical doctor who is board-certified in psychiatry and well qualified to render an opinion in this case. Thus, I gave great weight to his opinions.

(Tr. 13-15 (footnotes added).)

In addition, the ALJ went through a thorough and complete discussion of other evidence in the record, noting, *inter alia*, the following:

(1) In August 2006, Smith began treatment with MHMR for complaints of hallucinations that interfered with her sleep. She was diagnosed with depression and psychosis, and her functional impairment was rated as moderate (3 out of 5). (Tr. 14, 17; *see* Tr. 187-94; 260-65.)

(2) In October 2006, Smith underwent a consultative examination with Chandra Mudaliar, M.D. ("Mudaliar"), who diagnosed Smith with, *inter alia*, a history of major depression and noted that Smith had no skills and did not appear to be a candidate for any kind of job involving manual labor even though she had done manual labor all of her life. (Tr. 15; *see* Tr. 195-96.)

(3) In October 2006, MHMR examination records indicated that Smith was depressed, still having hallucinations at night, and her overall functioning was rated "low moderate (4 out of 10 with 10 being the highest functioning)." (Tr. 17; *see* Tr. 251.)

(4) In October 2006, Smith underwent a consultative psychological evaluation with Jason Simpson, Psy.D. ("Simpson"), who diagnosed her with major depression with psychotic features and rated her GAF score at 38.[3] (Tr. 17; *see* Tr. 199-204.)

(5) In November 2006, Smith's depression was rated as moderate (6 out of 10), her other symptoms were rated as mild, and her overall functioning was rated as "low moderate (4 out of 10)." (Tr. 19; *see* Tr. 245-46.)

---

[3] A GAF score of 31 to 40 reflects some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. DSM IV at 34.

(6) In December 2006, Smith reported that she was less depressed and hearing less voices and her overall functioning was rated as moderate (5 out of 10). (Tr. 19; *see* Tr. 242-43.)

(7) In February 2007, Smith told her doctor at MHMR that she was no longer hearing voices and her overall functioning was rated as moderate (5 out of 10). (Tr. 19; *see* Tr. 292.)

(8) In February 2007, Smith told a different MHMR worker that she was having difficulty sleeping, maintaining focus and making decisions, and that she was experiencing depression most of the day. (Tr. 19; *see* Tr. 291.)

(9) In November 2006, State Agency Medical Consultant ("SAMC") Mary Meyer, M.D., ("Meyer") opined that Smith's alleged mental limitations were not convincing or well supported by the evidence. She also found that Smith was moderately limited or not significantly limited in all functional areas;[4] was mildly restricted in her activities of daily living; had mild difficulties in maintaining social functioning; and had moderate difficulties in maintaining concentration, persistence, or pace. She also stated that Smith was able to understand, remember, and carry out detailed but not complex instructions; make decisions; attend and concentrate for extended periods; accept instructions; and respond appropriately to changes in a routine work setting (Tr. 19; *see* Tr. 206-23.) Meyer's opinions were affirmed in February 2007 by SAMC Jim Cox, Ph.D. (Tr. 276.)

(10) In October 2007, Olusegum Solano, M.D. ("Solano"), Smith's treating physician at MHMR, stated that Smith had major depression with psychotic features and a dysphoric disorder. He further opined that Smith was moderately restricted in her activities of daily living; had moderate difficulties in maintaining social functioning; had moderate limitations in understanding, carrying out, and remembering simple instructions; had marked limitations in dealing with changes in a routine work setting and in concentration, persistence, or pace; and was extremely limited in dealing with work stresses. Solano placed a question mark as to whether Smith could respond appropriately to supervision, coworkers, and usual work situations, and he opined that Smith could not work a full eight-hour workday. (Tr. 20; *see* Tr. 302-03.)

---

[4] Specifically, Meyer opined, *inter alia*, that Smith was not significantly limited in her ability to interact appropriately with the general public or get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 221.)

(11) In October 2007, MHMR treatment notes indicated Smith was having increased depression and anxiety and continued to hear voices. Her overall functioning was rated as "low *moderate* (4 out of 10)." (Tr. 20-21 (emphasis in original); *see* Tr. 352-53.)

(12) Later in October 2007, Smith's depression was rated as mild and her overall functioning was rated as moderate (5 out of 10). (Tr. 21; *see* Tr. 349-50.)

(13) In November 2007, Smith reported to MHMR that she had not been hearing voices and felt less depressed. Her overall functioning was rated as moderate (5 out of 10), her depression was rated as very mild, and her other individual symptoms were rated as very mild or not present. (Tr. 21; *see* Tr. 346-47.)

(14) In December 2007, Smith reported that she no longer had nighttime hallucinations and her overall functioning continued to be rated as moderate (5 out of 10). (Tr. 21; *see* Tr. 343-44.) She also "indicated her strengths included that she read well and she got along with others." (Tr. 21; *see* Tr. 313.)

(15) In February 2008, Smith reported to MHMR that she was not hearing voices and felt less depressed. Her overall functioning was rated as moderate (5 out of 10), her depression was rated as very mild, and her other individual symptoms were rated as very mild or not present. (Tr. 21; *see* Tr. 340-41.)

(16) In April 2008, Smith stated that her depression had increased because of relationship problems and that she heard voices when she was stressed. Her depression was rated as mild, her individual symptoms were rated as very mild or not present, and her overall functioning remained moderate (5 out of 10). (Tr. 22; *see* Tr. 337-38.)

In analyzing the above evidence, the ALJ did not give great weight to Simpson's findings. As to the GAF score given by Simpson, the ALJ stated that it "was inconsistent with the examination findings, and it may have been [improperly] arrived at by taking into account Ms. Smith's physical and environmental circumstances." (Tr. 18.) In addition, the ALJ stated:

> Although Ms. Smith alleged having hallucinations, which would be an impairment in reality testing, Ms. Smith's description of the hallucinations was considered very vague. Her mental status examination indicated her mood was depressed and her affect was blunt. However, her speech was clear and she was able to respond to all prompts. Her use of language was within normal limits for her age and education. . . . Ms. Smith's prognosis was fair depending on ongoing medication management and psychotherapy. She had adequate hygiene and fair grooming. Ms. Smith's mental status examination did not reveal findings consistent with major impairments or impaired communication.
>
> The MHMR treatment records also indicate Ms. Smith was consistently rated with global assessments of functioning of 45-50, which means she had serious symptoms or any serious impairment in social, occupational, or school functioning. However, I do not give controlling or great weight to those global assessments of functioning because they were inconsistent with Ms. Smith's mental status examinations and the MHMR ratings of Ms. Smith's individual symptoms, overall functioning, and functional impairment. The MHMR treatment notes consistently indicate Ms. Smith's individual symptoms were rated as moderate, mild, or not present, and her functioning was rated as moderate. Such ratings are inconsistent with global assessments of functioning of 45-50. I agree with Dr. Simonds that the ratings of Ms. Smith's symptoms and specific functioning warrant more weight than the global assessments of functioning scores.

(Tr. 18 (internal citations omitted).)

Furthermore, the ALJ did not give controlling or great weight to Solano's opinions "because they were inconsistent with the overall medical record and the MHMR treatment notes and ratings of Ms. Smith's symptoms and functioning." (Tr. 20.) Specifically, the ALJ stated, "The MHMR treatment notes consistently indicate Ms. Smith's symptoms were rated as moderate, mild, or not present, and her overall functioning and functional impairment were rated as moderate." (Tr. 20.)

Finally, the ALJ further stated the following:

> I have given Ms. Smith the benefit of the doubt in finding she is limited to doing jobs where she is not required to understand, remember, and carry out more than simple instructions; not required to have more than superficial interaction

with the public; and not required to adapt to more than simple changes in a routine work setting more often than on a weekly basis. The MHMR ratings of her symptoms and overall functioning as mild to moderate indicate she could probably do more complex work, and in December 2007 she said she got along with others. Her hallucinations also stopped with treatment. Although she claimed in April 2008 that she had hallucinations when stressed, she did not previously indicate such. Her hallucinations previously occurred mainly at night. Ms. Smith also testified she previously worked part-time during a period when she was having hallucinations, and the work stopped because the business closed, not because of her symptoms. Moreover, the above-stated mental residual functional capacity is such that would minimize the stress involved.

(Tr. 22.)

Based on the RFC assessment, the ALJ opined that Smith was not able to perform her past relevant work as a hand packager but there were a significant number of jobs that existed in the national economy Smith could perform. (Tr. 22-23.) Consequently, the ALJ found Smith was not disabled. (Tr. 23-24.)

E. Discussion

1. Function-By-Function Assessment of Smith's Mental Impairments

The first issue is whether the ALJ erred by failing to include a function-by-function assessment of Smith's ability to perform each of the mental activities described in 20 C.F.R. § 404.1545(c) into the mental RFC assessment, as required by SSR 96-8p and SSR 85-15. *See* 20 C.F.R. § 416.945(c). In her brief, Smith argues that the ALJ erred by failing to include any restrictions regarding Smith's ability to work with coworkers. Specifically, Smith states:

> The [ALJ] found DR [sic] Simonds' testimony and opinions 'well explained, well supported, and very consistent with the remaining medical evidence, particularly the objective medical evidence', but did not explain why a limitation in dealing with coworkers was omitted from the hypothetical to the VE in light of Simonds' opinion limiting Smith to 'minimal contact with co-workers.'

10

(Pl.'s Br. at 5.) Smith argues that Simonds' opinion is consistent with other medical evidence in the record regarding Smith's ability to work appropriately with coworkers and that a failure to include such a limitation violates SSR 96-8p and SSR 85-15.

RFC is what an individual can still do despite his limitations.[5] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id. See Myers v. Apfel*, 23 8F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id.* RFC is not the least an individual can do, but the most. SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id.* at *7. In making an RFC assessment, the ALJ must consider all the symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making

---

[5] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), superseded by SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children).

SSR 96-8p requires a function-by-function analysis of how a severe impairment impacts a claimant's RFC. It states, as relevant here, "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR [§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Paragraph (c) of 20 C.F.R. § 416.945, which explains how mental abilities are to be evaluated in relation to a claimant's RFC in SSI benefit cases, expressly includes the following functions: (1) "limitations in understanding, remembering, and carrying out instructions" and (2) "responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. § 416.945(c). Furthermore, SSR 85-15, which contains guidelines for evaluating whether a claimant with a mental impairment has the capability of performing other work, states, as relevant here:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

SSR 85-15, 1985 WL 56857, at *4 (S.S.A. 1985).

In this case, the ALJ, after reviewing the evidence in the record, determined that Smith's mental RFC was limited in that she was "not required to understand, remember, and carry out more than simple instructions; not required to have more than superficial interaction with the public; and not required to adapt to more than simple changes in a routine work setting more often than on a weekly basis." (Tr. 13.) Smith argues, in essence, that the ALJ erred in determining her mental RFC because the ALJ did not make the specific findings required by SSR 96-8p and SSR 85-15 relating to Smith's ability to work with coworkers when there was evidence from Simonds, the SAMCs, and Simpson that Smith should be limited to work with minimal contact with her coworkers. (Pl.'s Br. at 5-6.) The Court disagrees.

In reaching his final decision regarding Smith's mental RFC and her ability to work with the public, supervisors, and coworkers, the ALJ found that Smith should only be limited to minimal contact with the public. The ALJ based this decision on all the evidence in the record, including the following: (1) most of Simonds' testimony (Tr. 14-15), (2) treatment records from MHMR dated from 2006 through 2008 showing that Smith's symptoms were rated as moderate, mild, or not present, and her overall functioning and functional impairments were rated as moderate (Tr. 17-22), (3) Smith's own testimony in December 2007 that she got along with others (Tr. 21), (4) evidence that Solano placed question marks as to whether Smith could respond appropriately to supervision, coworkers, and usual work situations (Tr. 20); and (5) SAMC Meyer's ultimate opinion that Smith could accept instructions and respond appropriately to changes in the work setting.[6] (Tr. 19, 222).

---

[6] In Section I of the November 2006 Mental Residual Functional Capacity Assessment ("MRFC"), Meyer indicated, *inter alia*, that Smith was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors but was not significantly limited in her ability to get along with

13

Contrary to Smith's claims, the ALJ did comply with SSR 96-8p and SSR 85-15 as he acknowledged evidence in the record indicating that Smith's mental impairments might allegedly have some impact on her ability to work with coworkers, but, ultimately decided, based on contrary evidence in the record, that Smith was not limited by her mental impairments in this area.[7] The ALJ was not required to adopt all portions of Simonds', or any other, medical opinion. *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."); *McManus v. Astrue*, No. 1:09-CV-113-SAA, 2009 WL 5174683, at *6 (N.D. Miss. Dec. 21, 2009) ("Although the ALJ did give significant weight to [the treating physician's] opinion, he was not

---

coworkers or to interact appropriately with the public. (Tr. 221.) Furthermore, in Section III of the MRFC, Meyer stated that Smith could "accept instructions, & respond appropriately to changes in routine work setting." (Tr. 222.) Thus, according to Section III of the MRFC, Smith was not limited in her ability to respond appropriately to coworkers, supervisors, or the public. *See* Commissioner's Programs Operations Manual System ("POMS") §§ DI 24510.060B.2 (stating that Section I of the MRFC is "merely a worksheet to aid [the medical consultant] in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment") & DI 24510.060B.4 ("It is in [Section III] that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.").

[7] Smith requests that the Court adopt the reasoning from an unpublished opinion from the Houston Division of the United States District Court for the Southern District of Texas. In that opinion, dated July 18, 2005 and styled *Martay v. Barnhart*, No. H-05-154, the Court remanded the ALJ's decision because, *inter alia*, the ALJ failed to conduct a function-by-function assessment of how the claimant's mental impairments reduced his RFC to perform substantial gainful activity. The *Martay* Court, relying on a related analysis dealing with physical impairments in *Myers v. Apfel*, 238 F.3d 617, 620-21 (5th Cir. 2001) and analyzing the language of SSR 96-8p, found that the ALJ's analysis, at most, briefly touched upon the issues of the plaintiff's limitations in understanding, remembering, and carrying out instructions, and wholly failed to evaluate the impact of the claimant's mental impairments as to his limitations in responding appropriately to supervision, co-workers, and work pressures in a work setting. The instant case, however, is distinguishable. There is evidence that the ALJ evaluated the impact of Smith's mental impairments as to her limitations in responding appropriately to supervision and coworkers (the only factor at issue in this case) and, based on substantial evidence in the record, ultimately decided that Smith was only limited in her ability to interact with the public.

required to adopt all portions of it."). Because substantial evidence supports the ALJ's mental RFC determination, remand is not required.[8]

As to Smith's claim that the ALJ presented a defective hypothetical to the vocational expert ("VE") because he failed to include a limitation into the hypothetical regarding Smith's ability to respond appropriately to coworkers, the Court notes that the ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

In this case, the ALJ found, as set forth above, that Smith had the RFC to do light work where she is not required to do the following: (1) stoop, crouch, crawl, kneel, or climb stairs and ramps more than occasionally; (2) climb scaffolds, ladders, and ropes or balance; (3) stand/walk for more than 4 hours out of an 8 hour workday; (4) handle or finger objects more than frequently; (5) work at unguarded heights or near unguarded hazardous mechanical equipment;

---

[8] Even assuming that the ALJ did not perform the function-by-function analysis required by SSR 96-8p and SSR 85-15, any error is not prejudicial as there is no indication that the ALJ's determination would have changed had he done so and substantial evidence supports the ALJs' mental RFC determination. *See Pearson v. Barnhart*, 2005 WL 1397049, at *4 (E.D. Tex. May 23, 2005) (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (stating that a violation of a SSR may "constitute error warranting reversal and remand when an aggrieved claimant shows prejudice resulting from the violation")).

(6) understand, remember, and carry out more than simple instructions; (7) have more than superficial interaction with the public; and (8) adapt to more than simple changes in a routine work setting more often than on a weekly basis. (Tr. 13.) In his hypothetical question to the VE, the ALJ stated:

> I'm going to give you a person of 50 years of age, 11 years of formal education, same past work experience as the Claimant and ability to do light work at the following specific restrictions and requirements. Not required to stoop, crouch, kneel, crawl or climb stairs and ramps more than occasionally, not required to climb scaffolds, ladders, and ropes or to balance, not required to stand or walk for more than four hours out of an eight hour work day, not required to handle or finger objects more than frequently, not required to work at unguarded heights and near unguarded hazardous mechanical equipment, not required to understand, remember and carry out more than simple instructions, not required to have more than superficial interaction with the public, not required to adapt to more than simple change in a routine work setting more often than on a weekly basis.

(Tr. 47-48.) Because the ALJ properly incorporated all the functional limitations that he had found in his RFC assessment into the hypothetical question and the RFC determination is supported by substantial evidence, as discussed above, the Court finds that the ALJ did not present a defective hypothetical to the VE.

2. Part-Time Work

The next issue is whether the ALJ erred in determining that Smith was not disabled based on evidence that she was able to work part time. Smith claims that the ALJ violated SSR 96-8p when he found that Smith was not disabled because he relied on evidence that she was able to work part-time while having hallucinations. (Pl.'s Br. at 1, 8.)

As relevant here, SSR 96-8p states, "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular

and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule)." SSR 96-8p, 1996 WL 374184, at *7. In this case, the ALJ, in his RFC assessment, stated, "Ms. Smith can work full-time at this residual functional capacity on a sustained basis and maintain employment for an indefinite period of time." (Tr. 13.) Thus, it is clear that the ALJ did comply with SSR 96-8p as he specifically discussed Smith's ability to perform sustained work activities on a regular and continuing basis.

Smith appears to be arguing that such a determination was not supported by substantial evidence because, in making this finding, the ALJ relied on testimony that Smith was able to work part-time while having hallucinations. The Court disagrees.

To begin with, the ALJ recognized that the "question is whether she could work full-time not weather [sic] she could do work activity." (Tr. 14.) In addition, the ALJ considered Smith's testimony that she did not believe she could perform her prior job at the Aztec facility cleaning offices eight hours a day, but he did not find it entirely credible. (Tr. 13-14.) The ALJ also relied on other evidence in the record in determining that Smith could perform sustained work activities on a regular and continuing basis, including the following: (1) evidence that Smith's hallucinations usually occurred at night (Tr. 14); (2) an October 2006 consultative examination by Mudaliar indicating that Smith did not use any assistive devices despite the fact that she had polio problems with her right foot and she was able to walk slowly without assistance (Tr. 15); (3) an SAMC opinion in November 2006, re-affirmed in February 2007, indicating that Smith was capable of doing light work (Tr. 16); and (4) MHMR treatment records indicating that Smith's individual symptoms were rated as moderate, mild, or not present, and her functioning was rated as moderate (Tr. 18).

17

Finally, the ALJ stated that he had "given Ms. Smith the benefit of the doubt in finding that she is limited to standing and walking 4 hours in an 8-hour workday, and that she not be required to stoop, crouch, crawl, kneel, or climb stairs or ramps more than occasionally." (Tr. 16.) He also recognized that Smith might experience some degree of pain or discomfort at times of overexertion but that "even a moderate level of pain is not, standing alone, incompatible with the performance of certain levels of sustained work activity." (Tr. 17.) He further noted that Smith's mental status examination by Simpson "did not reveal findings consistent with major impairments or impaired communication." (Tr. 18.) Because the ALJ did not violate SSR 96-8p and substantial evidence supports the ALJ's decision regarding her ability to perform sustained work activities on a regular and continuing basis, remand is not required.

## II. RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The Court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until October 11, 2010. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is

timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## IV. ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until October 11, 2010 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED September 20, 2010.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv